IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | |
| v. | § | CASE NUMBER 2:20-CR-00005-02-JRG |
| | § | |
| | § | |
| ERIKA BALTAZAR ALCANTAR TOVAR, | § | |
| | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Defendant Erika Baltazar Alcantar Tovar's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) (the "Motion"). (Dkt. No. 204.) The Court, having considered the Motion, the response, the record, and the applicable law, finds that the Motion should be and hereby is **DENIED**.

## I.   BACKGROUND

After entering a guilty plea, on September 9, 2021, Tovar was sentenced to 70 months' imprisonment for one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Tovar did not file a direct appeal, and she filed this Motion on July 31, 2022, under the mailbox rule.

## II.   TOVAR'S MOTION

Tovar maintains that "extraordinary and compelling reasons" exist warranting compassionate release. Specifically, she states that (1) her own medical conditions place her at a higher risk for COVID-19 infection; (2) her father needs a caretaker after the sudden death of her mother; and (3) her youngest son struggles with a speech impediment as well as behavioral problems and needs a caretaker.

She explains that her family is struggling at home while she is imprisoned. Her father became ill prior to her imprisonment, and she suffers from a variety of medical conditions that "have required emergency care on many occasions," (Dkt. No. 204 at 14.) Tovar further highlights that with the sudden death of her mother, her father experiences difficulties with self-care and "would benefit from [her] care." (*Id*.) Her youngest son "has behavioral problems, speech impairment, and is in need of a caretaker." (*Id*.) While her older son is trying to help, "he is in college and can only help occasionally." (*Id*.) Tovar explains that her husband "struggles with trying to raise three children still at home and needs assistance." (*Id*.)

As for her own medical conditions, Tovar states that she has suffered from asthma for thirty-one years. She explains that she previously contracted COVID-19 and experiences long-term symptoms such as difficulty breathing. She also highlights that she experiences kidney stones, a hernia, and other "age related concerns such as arthritis." (*Id*. at pg. id. #903.) Such conditions, she contends, "place [her] at a higher risk of re-infection to COVID or one of its variants, with the possibility of death." (*Id*. at pg. id. #869.)

Finally, Tovar notes that she owns a home in Marshall, Texas, and has two employment opportunities if released. She owns a business in Marshall and, thus, is able to support herself and help her family upon her release. She also explains that she has maintained a good disciplinary history while imprisoned but has developed serious medical issues. Tovar attaches a plethora of documents in support of her Motion for compassionate release—including several letters from her family requesting her release.

## III.    THE GOVERNMENT'S RESPONSE

The Government urges this Court to deny Tovar's Motion for compassionate release. It maintains that she has not presented "extraordinary and compelling reasons" warranting release because she has contracted and recovered from COVID-19 and has been vaccinated. (Dkt. No. 205

at 1.) Moreover, the Government contends that Tovar is a danger to the community and that "the time remaining on her sentence" counsels against compassionate release under 18 U.S.C. § 3553(a). (*Id*.) The Government argues that Tovar should be required to serve the sentence the Court imposed given her criminal conduct—as she "committed her crimes in a conspiracy with drug and firearm traffickers affiliated with violent Mexican cartels." (*Id*. at 30.)

## IV.    LEGAL STANDARDS

A judgment of conviction imposing a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c)). One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A), the statute authorizing compassionate release.

The First Step Act of 2018 instituted the first major changes to compassionate release since its authorization in 1984. Pub. L. 115-391, 132 Stat. 5194. The Act, in part, amended section 3582(c), which gives the court discretion—in certain circumstances—to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the

defendant is not a danger to the safety of any person or the community, as provided under section 3142(g);

and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Even if extraordinary and compelling reasons exist, such reasons must outweigh the 18 U.S.C. § 3553(a) factors to warrant a sentence reduction. *See* 18 U.S.C. 3582(c)(1)(A). These factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . .

(5) any pertinent [Sentencing Commission] policy statement . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

(*Id*. § 3553(a).)

4

## V.    DISCUSSION AND ANALYSIS

While Tovar exhausted her required administrative remedies prior to filing this Motion, she is not entitled to compassionate release at this time. She failed to satisfy her burden of demonstrating the necessary circumstances to warrant compassionate release. With respect to the section 3353(a) factors, the Court has determined that Tovar has not served the lion's share of her prison sentence.

### a. Exhaustion of Administrative Remedies

The pleadings indicate that Tovar exhausted her administrative remedies before filing this Motion. The Government explains that Tovar submitted a request for compassionate release to the Warden at her prison institution, Federal Correctional Institution Aliceville, on April 12, 2022. (Dkt. No. 205 at 2.) In her request, Tovar sought compassionate release based on her medical ailments and her father's medical ailments. According to both Tovar and the Government, the Warden has not issued a response to her request. Because more than thirty days has elapsed since she submitted her request, Tovar satisfied the exhaustion requirement.

While Tovar exhausted her administrative remedies before filing this Motion, she failed to present extraordinary and compelling reasons warranting a sentence reduction.

### b. Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release, she must satisfy three criteria for release. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). First, as explained above, she must meet one of the two conditions listed in section 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(C)(1)(A)(i) or the defendant is at least 70 years of age, has served at least thirty years in prison, and meets the additional requirements under § 3582(c)(1)(A)(ii). (*Id.*) Second, the defendant must show that compassionate

release would be consistent with applicable policy statements. Finally, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors." (*Id*.)

Section 3582(c)(1)(A)(i) does not define what constitutes "extraordinary and compelling reasons" that merit compassionate release. Congress, instead, delegated its authority to the Sentencing Commission. *See* 28 U.S.C.§ 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). Before the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling. While not binding, the Commission's policy statement contained in § 1B.1.13 and the commentary provide guidance concerning what may constitute "extraordinary and compelling" reasons warranting compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir.) ("Although not dispositive, the commentary to § 1B.1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."), *cert. denied*, 141 S. Ct. 2688 (2021).

In Application Note 1 of § 1B1.13, the Commission defined "extraordinary and compelling reasons" to include four categories of circumstances, any of which could suffice to warrant compassionate release: (1) certain medical conditions of the defendant; (2) the defendant is sixty-five years or older and meets other requirements; (3) the defendant's family has specified needs for a caregiver; and (4) other reasons in the defendant's case that establish an extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.

i.        **COVID-19 Pandemic**

Tovar seeks compassionate release, in part, because of the COVID-19 pandemic. Specifically, she highlights her asthma condition and her long-term COVID-19 symptoms—such as difficulty breathing—from a previous COVID-19 infection. Tovar further notes that she has kidney stones, a hernia, and "age-related concerns such as arthritis." (Dkt. No. 204 at 14.) She argues that her medical conditions "place [her] at a higher risk of re-infection to COVID or one of [its] variants, with possibility of death." (*Id.*)

The Government asserts that Tovar's medical records reveal that she is approximately 45-years old and suffers from asthma, kidney stones, bladder stones, and general pain. (Dkt. No. 204 at 3.) She is fully ambulatory and engages in all normal activities of daily living. The Government states that Tovar recovered from COVID-19 and has been fully vaccinated—including a booster dose—which demonstrates that compassionate release is not warranted. (*Id.*)

The Government's argument is well-taken. While Tovar expresses legitimate concerns regarding COVID-19 and her health, they do not rise to the level of "extraordinary and compelling reasons" warranting release from prison. As an initial matter, Tovar failed to establish that the BOP cannot manage a COVID-19 outbreak within her prison unit or that her unit is specifically unable to treat her if she were to contract the virus. Tovar's previously recovering from a COVID-19 infection, being fully vaccinated, and having received a booster dose bolsters a finding that "extraordinary and compelling reasons" warranting compassionate release do not exist in her case.

The COVID-19 pandemic does not, by itself, provide a basis for a sentence reduction. After all, the COVID-19 virus poses a threat to the entire population—and it does not pick and choose whom to infect. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a

prisoner to release."); *United States v. Raia*, 954 F.3d 594, 597 (3d. Cir. 2020) ("But the mere existence of COVID-19 in society and the *possibility* that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtain the virus's spread.") (emphasis added).

Here, Tovar presents several medical conditions confirmed by her BOP records—asthma, hernia, general pain, and kidney stones.  She received the Pfizer COVID-19 vaccine in July and August 2021, followed by a booster does on May 2, 2022. (Dkt. No. 206 at 52; 81) (sealed). A review of the record shows that she has not been diagnosed with a terminal disease and does not suffer from a chronic or serious medical condition related to the aging process. She has not shown that her asthma or other ailments constitute "extraordinary and compelling reasons" warranting compassionate release—particularly in light of her ability to engage in self-care and normal activities of daily living. *See, e.g.*, *United States v. Sanchez-Chavez*, 2022 WL 15378117, at *1 (5th Cir. Oct. 27, 2022) (affirming district court denial of compassionate release to prisoner, which found, in part, that "his asthma was controlled and he has been vaccinated against COVID-19"); *United States v. Boutte*, 568 F. Supp.3d 706, 712 (E.D. Tex. 2021) ("Although Boutte asserts that he is presently suffering from asthma, he does not maintain that his asthma, which he acknowledges can be managed with medication, constitutes a serious medical condition that renders him unable to engage in self-care."); *United States v. Diaz*, 2022 WL 1004218, at *2 (S.D. Tex. Apr. 4, 2022) ("Defendant fails to demonstrate that his asthma condition is moderate to severe, or that his facility is refusing or unable to treat the condition.").

Tovar presents nothing more than her fear of COVID-19 reinfection, as she argues that her medical conditions place her at higher risk of infection. She has not shown that her history of asthma, general pain, and kidney stones constitute "extraordinary and compelling reasons"

warranting compassionate release. *E.g.*, *Thompson*, 984 F.3d at 433-35 (noting that defendant could "point to no case in which a court, on account of the pandemic, has granted compassionate release to an otherwise healthy individual with two, well-controlled, chronic medical conditions and who had completed less than half of his sentence.").

Tovar's recovery from COVID-19 further cautions against granting compassionate release. Federal courts throughout the country repeatedly deny requests for compassionate release where, like Tovar, the moving defendant has already recovered from a COVID-19 infection. *See, e.g.*, *United States v. Gipson*, 829 Fed. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted COVID); *United States v. Diaz*, 2020 WL 5505946, at *3-4 (S.D. Tex. Sept. 11, 2020) (finding no extraordinary or compelling reason on record wherein prisoner tested positive for COVID and "successfully recovered."); *United States v. Marley*, 2020 WL 7768406, at *2 (S.D.N.Y. Dec. 30, 2020) ("A defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release."); *United States v. Baker*, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."). Successful recovery of a prisoner like Tovar from a COVID-19 infection—even when that prisoner suffers from pre-existing medical conditions—weighs heavily against granting compassionate release. Accordingly, Tovar has not presented "extraordinary and compelling reasons" warranting compassionate release due to her medical conditions.

### ii.      Section 3553(a) Factors

The Court further finds that compassionate release is not warranted in this case in light of the applicable factors articulated in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v.*

*Shorter*, 850 Fed. App'x 327, 328 (5th Cir. 2021) (unpublished) (finding that the district court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors).

Tovar seeks compassionate release because her elderly father needs a caretaker due to his health conditions. She asserts that her youngest son exhibits behavioral problems and suffers from a speech impediment. While Tovar acknowledges that her husband is at home, she says that he is struggling with raising three children.

The Court sympathizes with Tovar and her family's health problems. However, these circumstances do not justify granting compassionate release at this time. The Fifth Circuit has recognized that the "courts that granted compassionate release [on the basis of pre-existing medical conditions] largely have done so for defendants who had already served the *lion's share* of the sentences and presented multiple, severe, health concerns." *Thompson*, 984 F.3d at 434-35 (emphasis added); *see also United States v. Muniz*, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020) (granting compassionate release for COVID-19 for a defendant who had served 80% of his reduced sentence and suffered from end-stage renal disease, diabetes, and hypertension).

Here, Tovar was sentenced to 70 months' imprisonment—approximately 5.8 years—in September 2021. She has served just over a year of her sentence, which is not the lion's share of her sentence. Reducing her prison term for her crime would fail to provide just punishment and promote respect for the law.  *See United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020) (affirming the denial of a compassionate release motion and explaining that "[i]nstead, the court concluded that 'releasing [Chambliss] after serving only 14 years of a 30-year sentence minimizes both the impact of [Chambliss'] crime and seriousness of the offense.'").

Where a prisoner has engaged in severe criminal conduct and has a significant criminal history, the district court has discretion to deny compassionate release under those circumstances.

*See id.* at 693-94 finding that the district court did not abuse its discretion in applying the § 3553(a) factors in considering prisoner's "severe conduct, his serious drug crime, and his criminal history, which included aggravated robbery."); *United States v. Anderson*, 2022 WL 2072864, at *3 (5th Cir. June 9, 2022) (unpublished) ("Moreover, our review of Anderson's criminal record supports the district court's statement that it 'cannot find that [Anderson] is not a danger to the community.").

Here, while Tovar has no criminal history, she engaged in a serious drug crime. Tovar's Presentence Investigation Report (PSR), (Dkt. No. 158) (sealed), reveals that she admitted to laundering funds that were "from the proceeds of methamphetamine trafficking." (*Id*. at 9.) The investigation involved several state and federal agencies and revealed "a combination of drug trafficking and/or distribution of weapons trafficking and money laundering in Texas and Mexico." (*Id*. at 5.) Tovar "was identified as a U.S. based sender of illicit funds" to Mexico out of her bakery business in East Texas. In fact, she admitted to her role in conducting wire transfers or funds using a money-service business "in conjunction with her business" and that she "was in the business of money laundering." (*Id*. at 7.)

The offense underlying Tovar's conviction and sentence is a serious drug crime—one that involves drug trafficking in Mexico. This is a serious offense, despite Tovar's lack of criminal history. She was sentenced at the bottom of the pertinent Sentencing Guidelines range, and the Court determines that granting her release after serving just one year of her sentence would neither provide just punishment for this offense nor promote respect for the law. While laundering money to drug traffickers in Mexico may not necessarily be a traditionally "violent crime," as the Government contends, Tovar's conduct represented a significant danger to the public, and she has not served the lion's share of her sentence.

In view of the nature and circumstances of Tovar's offense of conviction—conspiracy to commit money laundering—the court cannot conclude that releasing her from prison at this time would afford adequate deterrence or would protect the public. *See United States v. Keys*, 846 Fed. App'x 275, 276 (5th Cir. Apr. 30, 2021) ("Though Keys claims that the district court gave too much weight to his criminal history, his argument amounts to a mere disagreement with the court's balancing of the § 3553(a) factors.").

## VI.   CONCLUSION

In sum, Tovar failed to satisfy her burden of demonstrating the necessary circumstances to warrant compassionate release or any reduction in her sentence. Specifically, she has not demonstrated that extraordinary and compelling reasons exist warranting compassionate release at this time—as her medical conditions do not constitute "extraordinary and compelling reasons." She is ambulatory, engages in normal activities of daily living, is vaccinated, and has recovered from a COVID-19 infection.

Furthermore, in applying the section 3553(a) factors, the Court has determined that Tovar has not served the lion's share of her sentence and remains a danger to the community as a whole. While the Court expresses sympathy concerning her elderly father and her family struggles, releasing her from imprisonment at this time would undermine respect for the rule of law and just punishment. Consistent with the foregoing analysis, Tovar's *pro se* Motion for compassionate release (Dkt. No. 204), is **DENIED**.

**So ORDERED and SIGNED this 17th day of November, 2022.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE